# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of

IN THE MATTER OF THE SEARCH OF TARGET DEVICES 1 AND 2, CURRENTLY HELD AT THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, 1222 SPRUCE ST., ROOM 6.205, ST LOUIS, MO

)
)
)
)
)
)
)

Case No. 4:23 MJ 1242 JMB

SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, TFO James Bain, ATF, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the   EASTERN   District of   MISSOURI  , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:922(g)(1); 18:924(c)(1)(A); 21:841(a)(1); | Felon in possession of a firearm; Possession/brandish/discharge of a firearm in furtherance of a crime of violence or a drug-trafficking crime; Distribution and possession of controlled substances; |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

*Applicant's signature*

Task Force Officer James Bain, ATF
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: 07/24/2023

*Judge's signature*

City and state: St. Louis, MO

Honorable John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*

AUSA: Zachary M. Bluestone, #69004MO

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| TARGET DEVICES 1 AND 2, CURRENTLY ) | No. 4:20-MJ-1242 JMB |
| HELD AT THE BUREAU OF ALCOHOL, ) | **FILED UNDER SEAL** |
| TOBACCO, FIREARMS AND ) | |
| EXPLOSIVES, 1222 SPRUCE ST., ROOM ) | SIGNED AND SUBMITTED TO THE COURT FOR |
| 6.205, ST LOUIS, MO ) | FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A SEARCH WARRANT**

I, James Bain, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search warrant authorizing the examination of property – two electronic devices – described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since November 2018. I am currently assigned to the Kansas City Field Division, Saint Louis Field Office. My duties involve conducting criminal investigations into cases of illegal possession/transfer of firearms, firearms trafficking, and violent crimes involving firearms, and narcotics trafficking. Among other activities, I have participated in undercover operations using confidential sources and undercover law enforcement officers, debriefed witnesses and confidential sources, and analyzed contents of electronic devices to advance investigations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that **Martez LINDSEY** and other persons known and unknown committed violations of Title 18, United States Code, Sections 922(g)(1) and 924(c)(1)(A) and Title 21, United States Code Section 841(a)(1). There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED AND IDENTIFICATION OF THE DEVICES

5. The property to be searched are two electronic devices described as:

   a. An Apple iPhone 6s A1633 wireless telephone, silver in color with a cracked screen protector, currently in the lawful possession of the ATF related to Investigation Number 779045-23-0085 ("**Target Device 1**"); and

   b. An Apple iPhone wireless telephone, black in color with a heavily worn screen protector, currently in the lawful possession of the ATF related to Investigation Number 779045-23-0085 ("**Target Device 2**").

**Target Devices 1 and 2** are currently being held in a secure evidence vault located at 1222 Spruce St. Room 6.205, Saint Louis, Missouri.

6. The applied-for warrant would authorize the forensic examination of these devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

      This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication Devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication Devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    h. Internet: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my training, experience, and research, I know that **Target Device 1 and 2** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals who possessed or used a device.

## PROBABLE CAUSE

9. The United States, including ATF, is conducting a criminal investigation of **Martez LINDSEY** regarding the commission of the subject offenses.

10. On November 22, 2022, the St. Louis Metropolitan Police Department (SLMPD) began a murder investigation after a vehicle struck and killed a pedestrian at South 14th Street and I-64. The suspect vehicle was identified as a white Dodge Charger with a black front bumper and Illinois license plate # CQ33286.

11. SLMPD detectives identified **LINDSEY** as the person who was driving the Dodge Charger by tracing the license plate number and conducted a related investigative steps. On April 25, 2023, SLMPD officers executed at search warrant at **LINDSEY's** residence, located at 120 Bellerive, Apartment D., St. Louis, MO 63111, relative to the murder investigation. **LINDSEY** was located at the residence and taken into custody without incident.

12. While searching **LINDSEY's** residence, SLMPD officers located a stolen, black Taurus G3 firearm bearing serial number ABJ948149 in **LINDSEY's** bedroom. Significantly, prior to the execution of the search warrant, officers conducted a computer inquiry of **LINDSEY**, which revealed that he was a prior convicted felon and not allowed to possess firearms. While continuing the search of **LINDSEY's** bedroom, officers located multi-colored pills and a white powdery substance, which lab analysis revealed was cocaine base and methamphetamine. Officers also seized a digital scale with white residue and $1,370 in small-denomination bills. Additionally, law enforcement officers conducting surveillance saw **LINDSEY** make hand-to-hand transactions in front of his residence, and immediately prior to the execution of the search warrant, a suspicious man exited **LINDSEY's** residence and ran when he saw police. It is of note that **LINDSEY** has a prior state conviction for possessing black-tar heroin, which is a different controlled substance than what officers recovered when executing the search warrant. *State v. Martez Lindsey*, No. 1622-CR01082 (Mo. 22nd Cir. Ct.)

13. Following the search, SLMPD officers conducted an interview with **LINDSEY**, who advised that the handgun found in his bedroom belonged to him and that he uses it for protection. **LINDSEY** also stated he was aware that he is a convicted felon and not allowed to possess a handgun. **LINDSEY** advised that the narcotics found inside of the residence belonged to him and he used them to stay awake at night for work.

14. On June 14, 2023, a federal grand jury returned an indictment charging **LINDSEY** with violating Title 18, United States Code, Section 922(g)(1). *United States v. Martez Lindsey*, No. 4:23-CR-310-MTS/SPM, Doc. 2. On July 10, 2023, information was received that **LINDSEY** had a scheduled court appearance in the Circuit Court for the City of St. Louis at 0900 hours. ATF Agents/TFO's responded to the court appearance and took **LINDSEY** into custody. At the time of **LINDSEY's** arrest, **LINDSEY** was in possession of **Target Device 1 and 2. Target Device 1 and 2** were seized by ATF.

15. On July 20, 2023, TFO Bain interviewed a witness, Japris Bryant. Bryant advised that she and LINDSEY had been in a romantic relationship on and off since 2019. Bryant advised she never observed LINDSEY selling narcotics firsthand. However, she knew LINDSEY was member of the I-55 Boyz Street Gang and that the gang sold narcotics. Bryant advised that she often observed LINDSEY in possession of multiple cellular phones, which is a potential indicia of drug trafficking (see below). It is of note, ATF Agents/TFOs conducted a narcotics conspiracy investigation into the I-55 Boyz Street Gang and determined that the I-55 Boyz Street Gang was responsible for distributing a large amount of fentanyl throughout the St. Louis Area. *See United States v. Davante Lindsey, et al.*, No. 4:22-CR-229-JAR/JMB.

16. During my career as a law enforcement officer, I have conducted numerous drug trafficking investigations. Based on my training and experience in such investigations, including electronic surveillance investigations, I know that drug traffickers communicate with each other utilizing cellular telephones and other electronic devices to facilitate the overall scheme of their illicit endeavors. In order to be successful, drug traffickers must communicate via telephones or other electronic devices to orchestrate the importation of controlled substances; to manage and maintain contact with drug couriers; to maintain contact with lower-level distributors in their day-to-day operations; to maintain contact with safe house operators where narcotics are stored; and to coordinate the return movement of the drug derived profits back to the sources of supply.

17. Based on my experience and training, I am aware that individuals engaged in criminal activity as described herein often "dump" or exchange their telephones and electronic devices for new devices. Further insulating themselves from law enforcement detection, such individuals are known to subscribe to telephone and wireless communications and data services in other persons names and to frequently change their telephone number and or ESN/IMSl numbers.

18. I also know from prior investigations, that individuals use of multiple electronic devices. As an example, a subject will use a certain electronic device to contact sources of supply, another electronic device to contact couriers, and other electronic devices to contact underlings. Based on my training and experience and that of the investigative team, I know these measures are employed to thwart law enforcement's ability to detect persons engaged in criminal activity and conduct electronic surveillance on co-conspirators. Based on the number of electronic devices seized during this investigation, investigators believe that the targets described herein may be compartmentalizing the use of his electronic devices, as related above.

19. I also know based on my training and experience that individuals involved in the trafficking of narcotics use devices such as **Target Device 1 and 2** to facilitate their overall schemes and their illicit endeavors. In order to make it easier for drug currency and narcotics traffickers to communicate with one another, their phones and other devices often contain stored telephone numbers, programmed names, addresses, and encrypted codes and names. I also know that the phones and other communication devices of currency and narcotics traffickers often contain voicemails, text messages, photographs and emails relating to communications with co-conspirators, meeting locations as well as the telephone numbers of co-conspirators who have called or been called by the device.

20. Based on my training and experience, and discussions I have had with other law enforcement officers, I am informed that individuals engaged in the criminal activities described herein typically utilize electronic devices and mobile telephones for a variety of purposes to advance and commit criminal offenses. Subjects use electronic devices to facilitate their overall schemes and their illicit endeavors. Individuals engaged in the activities described in this affidavit use electronic devices and mobile phones for a variety of reasons including the following:

a. to communicate with associates and co-conspirators before, during, and after criminal activities, or to communicate with other non-involved third parties. They do this via text, voice, video or photo and on applications running on the device. Applications operated on electronic devices give individuals the ability to communicate anonymously with other persons;

b. to access mapping and location services to assist in planning and facilitating their crimes, and to plan for their escape from crime scenes. Location data can indicate the user's patterns of behavior such as their physical location at the time the incidents occurred, and immediately prior to or after such incidents. It may also provide data related to the location of associates' residences, safe houses or other places used to perpetrate crimes;

c. to access contact lists of associates, confederates, and third parties;

d. individuals take pictures and videos of themselves and associates. They do so to memorialize their activities and the fruits of their illicit activities such as contraband, firearms, and illegally obtained currency. They use the images or to brag to other confederates. These individuals frequently keep photographs on their electronic devices and, as described below, often post the images on social media;

e. individuals use electronic devices to communicate over online social media platforms such as Facebook, Twitter, Snapchat, etc. They communicate with their associates and confederates over such platforms. They post and display images and videos of contraband, fruits of their crimes, wealth, and otherwise memorialize criminal activities;

f. to access the internet to search for and identity personal victims, victim business locations, and other areas of interest related to their illicit endeavors. Devices enable perpetrators to quickly locate and communicate with such individuals. In summary, electronic devices and the services they provide are such a pervasive and insistent part of daily life that carrying one is indispensable to participation in modern society. Thus, there is reason to believe that the individuals and their associates described in this affidavit used mobile electronic devices in conjunction with the events described herein. The devices themselves operate as instrumentalities of the crimes.

21. In my experience investigating federal firearms laws, I have found that those engaged in firearms offenses use cellular devices to communicate about their criminal activities, including but not limited to the unlawful purchase, possession, and sale of firearms and firearms accessories. They do this through text, voice, video or photo applications running on the device. Furthermore, it is common for those committing crimes with firearms to photograph those firearms, and/or display them via Facebook or other social media. As **LINDSEY**, is prohibited from possessing a firearm, he may also have used his phone to find and acquire the firearm found in his possession. Although there are several phones, those engaged in the subject offenses frequently use more than one phone. Such individuals often use phones to compartmentalize

their activities in order to evade apprehension. For example, one phone may be to purchase guns, while another phone is used for photographing guns and/or displaying them on social media.

22. **Target Device 1 and 2** are currently in the lawful possession of the ATF. They came into the ATF's possession in the following way: seized incident to **LINDSEY's** arrest. Thus, while the ATF might already have all necessary authority to examine **Target Device 1 and 2,** I seek this additional warrant out of an abundance of caution to be certain that an examination of **Target Device 1 and 2** will comply with the Fourth Amendment and other applicable laws.

23. In my training and experience, I know that **Target Device 1 and 2** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the ATF.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Target Device 1 and 2** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Target Device 1 and 2** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **Target Device 1 and 2** to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

27.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Target Device 1 and 2** described in Attachment A to seek the items described in Attachment B, wherein your affiant believes **Target Device 1 and 2** stores information relative to where **LINDSEY** got the illegal firearm from and information relative to **LINDSEY's** narcotics possession/distribution.

28.     Because this warrant seeks only permission to examine **Target Device 1 and 2** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

I state under the penalty of perjury that the foregoing is true and correct.

24 July 2023
DATE

James Bain
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this ___24th___ day of July, 2023.

HONORABLE JOHN M. BODENHAUSEN
United States Magistrate Judge
Eastern District of Missouri

14

## TARGET DEVICE 1 - ATTACHMENT A

The property to be searched is one Apple iPhone 6s A1633 wireless telephone, silver in color with a cracked screen protector, currently in the lawful possession of the ATF related to Investigation Number 779045-23-0085 ("Target Device 1"). **Target Device 1** was found on **LINDSEY'S** person when he was taken into custody on his federal arrest warrant. **Target Device 1** was seized and is currently being held in a secure evidence vault located at 1222 Spruce St. Room 6.205, Saint Louis, Missouri. **Target Device 1** is pictured below:



This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## TARGET DEVICE 1 - ATTACHMENT B

1. All records on **Target Device 1** described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g)(1) and 924(c)(1)(A) and Title 21, United States Code Section 841(a)(1) committed by **LINDSEY**:

    a. Lists of customers and related identifying information;

    b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. All bank records, checks, credit card bills, account information, and other financial records.

    e. GPS coordinates of **Target Device 1** during the times of the identified homicide and drug transactions;

    f. Any information related to the illegal possession of firearms and crimes of violence, including but not limited to photographs, text messages or instant messages, call logs, social media content, internet searches, IP address information, and portable media utilized;

2. Evidence of user attribution showing who used or owned **Target Device 1** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

## TARGET DEVICE 2 - ATTACHMENT A

The property to be searched is one Apple iPhone wireless telephone, black in color with a heavily worn screen protector, currently in the lawful possession of the ATF related to Investigation Number 779045-23-0085 ("**Target Device 2**"). **Target Device 2** was found on **LINDSEY'S** person when he was taken into custody on his federal arrest warrant. **Target Device 2** was seized and is currently being held in a secure evidence vault located at 1222 Spruce St. Room 6.205, Saint Louis, Missouri. **Target Device 2** is pictured below:



This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## TARGET DEVICE 2 - ATTACHMENT B

1. All records on **Target Device 1** described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g)(1) and 924(c)(1)(A) and Title 21, United States Code Section 841(a)(1) committed by **LINDSEY**:

   a. Lists of customers and related identifying information;

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. All bank records, checks, credit card bills, account information, and other financial records.

   e. GPS coordinates of **Target Device 2** during the times of the identified homicide and drug transactions;

   f. Any information related to the illegal possession of firearms and crimes of violence, including but not limited to photographs, text messages or instant messages, call logs, social media content, internet searches, IP address information, and portable media utilized;

2. Evidence of user attribution showing who used or owned **Target Device 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4